UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MONTE MILLER,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
|    v. | )    **CAUSE NO. 1:21-cv-00336-SLC** |
| | ) |
| **WESTFIELD INSURANCE,** | ) |
| | ) |
|    **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Monte Miller was injured in an automobile accident while acting in the scope of his employment in July 2019. (ECF 4). In July 2021, after receiving workers' compensation benefits totaling $157,686.13 and a settlement from the tortfeasor's insurance company for the tortfeasor's bodily injury limits of $100,000, Miller filed this lawsuit against his employer's insurer, Defendant Westfield Insurance ("Westfield"), seeking to recover the underinsured motorist (UIM) coverage limit under his employer's insurance policy.[1] (ECF 4).

On February 7, 2022, Westfield filed a motion for partial summary judgment, together with a memorandum in support, asking the Court to determine as a matter of law that Westfield is entitled to setoffs against its UIM policy limit for Miller's receipt of workers' compensation payments and the tortfeasor settlement. (ECF 14, 15). On March 24, 2022, Miller timely filed a response in opposition to the motion, together with a response to Westfield's statement of material facts. (ECF 21, 22). Westfield filed a reply brief on April 5, 2022 (ECF 23), and oral

---

[1] Both parties at times refer to "UM/UIM" coverage in their briefs. Uninsured motorist (UM) insurance pays the medical bills and lost wages for a motorist and her passengers after an accident where the at-fault driver does not have liability insurance. *See* Emily Guy Birken, *What is Uninsured Motorist Coverage?* (Sept. 30, 2021), https://www.thebalance.com/what-is-uninsurerd-motorist-coverage-5179834. UIM coverage "kicks in when an at-fault driver does carry liability insurance, but not enough to pay for the full extent of the damage." *Id*. Because this dispute involves an UIM, rather than an UM, for ease the Court will simply refer to UIM coverage throughout this Opinion and Order.

argument was heard on the motion on July 12, 2022 (ECF 28, 29). The motion is now ripe for ruling.[2] For the following reasons, Westfield's motion for partial summary judgment will be GRANTED.

## I. STATEMENT OF MATERIAL FACTS[3]

The material facts as summarized by Westfield are, for the most part, undisputed by Miller. (*See* ECF 15 at 2-6; ECF 22). Consequently, the Court will only cite to the record when it is helpful for clarification or if a factual dispute exists between the parties pertaining to the evidence being discussed.

Miller was employed as a mechanic by Kelley Automotive Group, LLC ("Kelley"). On July 23, 2019, while acting in the course and scope of his employment, Miller was test driving a vehicle he had been working on that was owned by Sandy Sweet and insured by Indiana Farm Bureau under Policy No. 0004638982 (the "Farm Bureau Policy"). (*See* ECF 14-5). The Farm Bureau Policy affords UIM coverage in the amount of $100,000 per person and $300,000 per occurrence.

During the test drive, Miller was stopped at a red light, turning right at the intersection of Illinois Road and Scott Road in Fort Wayne, Indiana, when he was suddenly and without warning rear-ended by Maria Parra, who was insured by Donegal Mutual Insurance Company under Policy No. PAF 7020277-03 (the "Donegal Policy"). (*See* ECF 14-7). As a result of the accident, Miller sustained physical injuries; underwent multiple back surgeries; will require

---

[2] The Court has subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1332(a), diversity of citizenship. (*See* ECF 1). Both parties have consented to the exercise of jurisdiction by the Magistrate Judge. (ECF 8).

[3] For summary judgment purposes, the facts are recited in the light most favorable to Miller, the nonmoving parties. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

unforeseeable medical treatment; has been required to engage in the services of hospitals, physicians, chiropractors, and therapists for medial care; and has incurred substantial medical bills for such treatment.  Miller has been forced to miss work and has not returned to work since the accident.  Miller received workers' compensation benefits through Kelley that were administered by Accident Fund Insurance Company of America ("Accident Fund"), in the amount of $67,375.08 for lost wages and $90,311.05 for medical payments, resulting in a total workers' compensation payments of $157,686.13.

After the accident, Miller filed a lawsuit against Parra, the tortfeasor.  The suit was subsequently settled for Parra's bodily injury limits of $100,000 through the Donegal Policy.[4]  (*See* ECF 14-7 at 2).

Kelley was insured with Westfield under Claim No. 0002060524, Policy No. CMM 5461468 (the "Westfield Policy"), at the time of the accident.  (*See* ECF 21-1 at 302-06).  The Westfield Policy provides UIM coverage to Kelley, and by extension of his employment, to Miller.  Westfield represents in its motion and in its answer to an Interrogatory posed by Miller that UIM coverage in the Westfield Policy is $1,000,000.[5]  (ECF 14-4 at 5).

Miller disputes Westfield's representation of the UIM coverage limit in the Westfield Policy, asserting that it "should be $10,000,000" not $1,000,000.  (ECF 21 at 4).  Miller also submits additional material facts relevant to Westfield's answer to the Interrogatory about the UIM limit in the Westfield Policy.  (ECF 22 ¶¶ 19-21).  The "Limit of Insurance" line on the

---

[4] Because the limits under the Farm Bureau Policy and the Donegal Policy are the same ($100,000/$300,000), effectively $0 is available to Miller under the Farm Bureau Policy.

[5] Westfield's counsel explained during oral argument that while the UIM coverage limit is listed as $100,000 in the Westfield Policy (*see* AR 231-32 ("Renewal Auto Dealers Declarations")), an insurance adjustor at some point misquoted the UIM coverage limit as being $1,000,000, so Westfield decided to honor that amount in this case (ECF 14-4 at 5).  Consequently, neither party contends that the UIM coverage limit is less than $1,000,000.

UIM endorsement in the Westfield Policy (the "UIM Endorsement") is blank. (*Id.* ¶ 19 (citing ECF 21-1 at 302)). Just below that blank line, a sentence reads: "Information required to complete this Schedule, if not shown above, will be shown in the Declarations." (ECF 21-1 at 302). The "Commercial Liability Umbrella Declarations" (the "Umbrella Declarations") in the Westfield Policy provide a "Personal & Advertising Injury Limit" with "Limits of Insurance" in the amount of $10,000,000. (ECF 22 ¶ 20 (citing ECF 21-1 at 446)). According to the Umbrella Declarations, Westfield provides "Auto Liability" coverage with "Limits of Liability" in the amount of $1,000,000. (*Id.* (citing ECF 21-1 at 446)).

Following his settlement with Parra through the Donegal Policy, Miller filed the instant lawsuit against Westfield seeking to recover damages under the UIM coverage in the Westfield Policy, having exhausted the available bodily injury limits under the Donegal Policy. In this motion for partial summary judgment, Westfield contends that as a matter of law it is entitled to setoffs from the UIM coverage limit—which Westfield represents is $1,000,000, but Miller asserts should be $10,000,000—for: (1) the $100,000 settlement that Miller received from Parra through the Donegal Policy, and (2) the $157,686.13 in total workers' compensation payments Miller received through the Accident Fund. (ECF 14 at 3). Miller disagrees, asserting that "the UIM limits should be $10,000,000 and no reduction for worker's compensation payments or the tortfeasor's [settlement] payments should apply." (ECF 21 at 4).

## II.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to

4

draw from the facts; these are jobs for a factfinder." *Id.* (citations omitted). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* (citations omitted). However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citation omitted).

### III. DISCUSSION

Westfield argues that the Westfield Policy clearly and unambiguously provides for setoffs against the UIM coverage for workers' compensation payments and a tortfeasor's settlement payments. (ECF 15 at 8-14). Miller contends just the opposite—that the Westfield Policy clearly and unambiguously provides that *no* setoffs for workers' compensation payments or a tortfeasor's settlement payments should be applied. (ECF 21 at 5-14). The parties also dispute the UIM coverage limit in the Westfield Policy: Westfield represents in its briefs and Interrogatory answer that it is $1,000,000, but Miller asserts it should be $10,000,000. (ECF 14 at 2 (citing ECF 14-4 at 5)); ECF 21 at 3-4, 10 (citing ECF 21-1 at 446)). Before turning to the merits of the parties' arguments, the Court will review the legal standard applicable to this insurance contract dispute.

*A. Applicable Legal Standard*

When sitting in diversity, the court applies the law of the state originating the controversy, "attempting to predict how the [state] Supreme Court would decide the issues presented here." *Smith v. Equitable Life Assurance Soc'y of the U.S.*, 67 F.3d 611, 615 (7th Cir. 1995); *see also Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 786 (7th Cir. 2017) ("In construing a state statute, we must interpret the statute as we think the state's highest court would interpret it."). Through the parties' briefing, it is apparent that they agree Indiana law substantively applies to this dispute. (*See* ECF 15 at 8-14; ECF 21 at 5-14).

"Generally, the interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment." *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 665-66 (Ind. 2006); *see also Nat'l Athletics Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008); *Coast to Coast Auto Sales, Inc. v. Secura Ins., Inc.*, No. 1:13-cv-00011-TWP-DKL, 2014 WL 1405801, at *3 (S.D. Ind. Apr. 11, 2014); *Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006); *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 502 (Ind. Ct. App. 2003). "A contract for insurance 'is subject to the same rules of interpretation as are other contracts.'" *Morris*, 848 N.E.2d at 666 (quoting *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 537-38 (Ind. 1997)); *see also Coast to Coast Auto Sales, Inc.*, 2014 WL 1405801, at *3; *Briles*, 858 N.E.2d at 213; *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004).

"If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning, but if the language is ambiguous, the insurance contract should be strictly construed against the insurance company." *Morris*, 848 N.E.2d at 666 (citing

6

*Nuckolls*, 682 N.E.2d at 538); *see also Coast to Coast Auto Sales, Inc.*, 2014 WL 1405801, at *3. A policy is ambiguous only if it is 'susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning.'" *Matteson v. Citizens Ins. Co. of Am.*, 844 N.E.2d 188, 192 (Ind. Ct. App. 2006).

       *B. Whether the Westfield Policy Provides for Setoffs Against the UIM Coverage Limit*

The question before the Court is whether Westfield is entitled to a determination as a matter of law that Miller's receipt of $157,686.13 in workers' compensation payments and $100,000 in settlement proceeds from Parra's insurer are setoffs against the UIM coverage limits in the Westfield Policy. Ultimately, the Court answers this question in the affirmative.

    1. <u>The UIM Endorsement in the Westfield Policy</u>

The UIM Endorsement (four pages in total) in the Westfield Policy has the words "Commercial Auto" on the top of the right side of the first page. (ECF 21-1 at 302). As stated earlier, in the middle of the first page of the UIM Endorsement, a "Limit of Insurance" box is blank, but beneath it reads: "Information required to complete this Schedule, if not shown above, will be shown in the Declarations." (*Id.*).

The relevant portions of the UIM Endorsement as to "Coverage" and "Limit of Insurance" are as follows:[6]

    **A.**    **Coverage**

        **1.**    We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an

---

[6] As stated earlier, the parties do not dispute that the Westfield Policy provides UIM coverage to Kelley, and by extension of his employment, to Miller. Therefore, the section of the UIM Endorsement pertaining to "Who Is an Insured" is not set forth here. (*See* ECF 21-1 at 302-03).

7

"underinsured motor vehicle".  The damage must result from "bodily injury" sustained by the "insured" and caused by an "accident" with an "underinsured motor vehicle."
. . . .

2. We will pay under this coverage only if Paragraph a. or b. below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bond or policy . . . .

. . . .

**D.   Limit of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit shown in this endorsement.

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits, or similar law.

4. No "insured" shall recover duplicate payments for the same

8

elements of "loss" or payments in excess of damages sustained.

(*Id.* at 2-3).

### 2. Interpretation of the UIM Endorsement Language Regarding Setoffs

As stated earlier, "[i]f the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning . . . ." *Morris*, 848 N.E.2d at 666 (citations omitted). Here, the "Limit of Insurance" section on the second page of the UIM Endorsement clearly states that Westfield "will not pay for any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' *under any worker's compensation* . . . or similar law." (ECF 21-1 at 303 (emphasis added)). Similarly, this section provides that "[t]he Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible . . . ." (*Id.*). This section further recites that an insured shall not "recover duplicate payments for the same elements of "'loss' or payments in excess of damages sustained."[7] (*Id.*). This clear and unambiguous language in the UIM Endorsement causes the Court to conclude that Miller's receipt of workers' compensation payments and settlement proceeds from Parra's insurer are proper setoffs against the "Limit of Insurance" applicable to the UIM coverage.

The cases cited by Westfield involving similar policy language support this conclusion.

---

[7] Miller argues that "[d]uplicate payments" or "same elements of loss" ordinarily mean "identical or doubled payments." (ECF 21 at 9). As such, he contends that "Westfield would not be paying [Miller] twice for the same elements of loss by offering the full limits when he is entitled to the total value of 'damages sustained.'" (*Id.*). He suggests, for example, that the entire $1,000,000 of UIM coverage could go to the one-third of his gross weekly wages that workers' compensation did not cover. (*Id.* at 9-10). As Miller sees it, he "is not asking to double dip or obtain more damages than he sustained, but simply to be afforded the opportunity to recover payment as to every element of damages he sustained . . . ." (*Id.* at 10). The Court, however, need not reach this argument because the plain language of the UIM Endorsement clearly provides setoffs for workers' compensation payments and the tortfeasor settlement proceeds.

9

In *Justice v. American Family Mutual Insurance Co.*, 4 N.E.3d 1171 (Ind. 2014), the Indiana Supreme Court found that the plaintiff's UM/UIM policy with the defendant was clear and required that the plaintiff's receipt of $71,958.50 in workers' compensation benefits and $25,000 from the underinsured motorist's insurer, be set off from the defendant's $50,000 UM/UIM coverage limit. *Id.* at 1177; (*see* ECF 15 at 8-10). The relevant section of that policy reads:

> The limits of liability of this coverage will be reduced by:
>
> 1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.
>
> 2. A payment under the Liability coverage of this policy.
>
> 3. A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law.

*Id.* at 1174 (citation and emphasis omitted); *see Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 531 (Ind. 2002) ("[W]hen the policy attempts to reduce limits, as opposed to damages, it chooses language that does precisely that."). The Indiana appellate courts reached similar outcomes in *Anderson v. Indiana Insurance Co.*, 8 N.E.3d 258 (Ind. Ct. App. 2014), and *Hardiman v. Governmental Exchange*, 588 N.E.2d 1331 (Ind. Ct. App. 1992), the other two cases cited by Westfield, concluding that a UIM insurance provider is entitled to a setoff for workers' compensation payments, though not in an amount that would deprive the insured of the statutory minimum in UIM benefits under Indiana law. (*See* ECF 15 at 10-12); *see also* Ind. Code § 27-7-5-2(a)(2) (setting the current statutory minimum in UIM benefits in Indiana at $50,000).

Despite this caselaw, Miller claims in opposition that the "Westfield policy clearly and unambiguously does *not* permit any setoffs . . . ." (ECF 21 at 1 (emphasis added)). In doing so,

10

Miller relies solely on *Frye v. Auto-Owners Insurance Co.*, 845 F.3d 782 (7th Cir. 2017), claiming that it is a "showstopper" (ECF 21 at 5) and "supersedes" the three cases Westfield cites (*id.* at 13). In *Frye*, the plaintiff did not dispute a setoff for the payment from the tortfeasor under the automobile policy where the defendant's automobile policy language clearly provided for such reduction. 845 F.3d at 784-85. Rather, Frye challenged a setoff for workers' compensation payments under the defendant insurer's commercial umbrella policy, claiming that the umbrella policy language clearly precluded the setoff. *Id.* at 788-89.

Significantly, the umbrella policy in *Frye* expressly included UM/UIM coverage, and the umbrella policy declarations reflected a UM/UIM liability limit of $1,000,000, as well as a $5,000,000 general liability limit. *Id.* at 785. But because the umbrella policy stated that the defendant's liability "shall be reduced by [workers-compensation payments and payments made by or on behalf of the underinsured motorist] *which are in excess of [$1 million]*," and Frye's workers' compensation payments did not exceed that amount, no portion of the workers' compensation payments were subtracted from the defendant's umbrella policy $5,000,000 general liability cap. *Id.* at 788.

Miller claims *Frye* "completely destroys" Westfield's argument for summary judgment, but there is a fundamental problem with his reliance on *Frye*. Frye's employer's umbrella policy apparently expressly included UM/UIM coverage in its declarations, *see id.* ("Paragraph 4(b)(1)(c) *of the umbrella policy* provides that the insurer's limit of liability for UIM coverage shall be reduced by . . . ." (emphasis added)), but the Umbrella Declarations at issue here do not (*see* ECF 21-1 at 446).

In that regard, Indiana Code § 27-7-5-2(a) requires that insurers make UM/UIM coverage

11

of at least $50,000 available "in each automobile liability or motor vehicle liability policy of insurance," but subsection (d)(1) states that "[a]n insurer is not required to make available in a commercial umbrella or excess liability policy the coverage described in subsection (a)." Thus, as the parties in *Frye* acknowledged, "the plain language of § 27-7-5-2(d) exempts insurers from having to provide UIM coverage in their commercial umbrella policies." 845 F.3d at 786.

To reiterate, UIM coverage is not listed as an underlying insurance in Kelley's Umbrella Declarations (ECF 21-1 at 446), and thus in contrast to *Frye*, the Umbrella Declarations here are irrelevant for determining whether Westfield is entitled to set off Miller's receipt of tortfeasor and workers' compensation payments. *See North v. Selective Ins. Co. of S.C.*, 155 N.E.3d 662, 666-67 (Ind. Ct. App. 2020) ("Although not required to, an insurer *may* offer UM/UIM coverage as part of [an] . . . umbrella policy, and, if so offered, an insured may purchase it, if desired. . . . . While UM/UIM coverage was available from Selective with an endorsement, there is no evidence James applied for and purchased it, and there is no endorsement for UM/UIM coverage in James' policy."). Consequently, Miller's reliance on *Frye* is not the "showstopper" he believes it to be, given that he has not produced any evidence that the Umbrella Declarations associated with the Westfield Policy include UIM coverage. *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (citation and internal quotation marks omitted)).

And while "Auto Liability" coverage is included as an underlying insurance in the Umbrella Declarations (ECF 21-1 at 446), UIM coverage is "distinct from liability coverage."

12

*Permanent Gen. Assurance Corp. v. Moore*, 341 F. Supp. 2d 579, 582 (D.S.C. 2004); *see also Hawley v. Farm Bureau Prop. & Cas. Ins. Co.*, No. CV 18-0489 JHR/SCY, 2019 WL 4747996, at *3 (D.N.M. Sept. 30, 2019); *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 197 (Ariz. 2012) ("[W]e have repeatedly recognized that liability insurance is distinct from first-party UIM coverage."). For example, in *Blake v. Thornton*, 914 N.E.2d 1102 (Ohio Ct. App. 2009), the court rejected such an argument, explaining:

> The distinction between first-party UIM coverage and third-party liability coverage is an important one. . . . [L]iability insurance is an indemnity agreement which protects the insured against his liability to others and thus provides third-party liability coverage. On the other hand, the purpose of first-party UM/UIM coverage is to provide protection to an insured who is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle because of injury to the insured herself.
> . . . .
>
> The . . . auto liability policy was included in the schedule of underlying insurance to the . . . umbrella policy. Although the underlying . . . auto policy contains UIM coverage, the umbrella policy . . . only provided excess insurance with respect to liability coverage. . . .
>
> The . . . umbrella policy does not contain any provision that provides UM/UIM coverage. The language of the policy clearly indicates that the policy provides excess protection to the insured against liability to third parties. It is apparent from the plain and ordinary meaning of the policy's terms that the parties to the insurance contract did not contemplate any UM/UIM coverage under the umbrella. . . . [T]his is further demonstrated by the fact that no premiums were assessed for such [UM/UIM] coverage under the policy.

*Id.* at 1106-07; *see also Broder v. Acuity*, No. 2008AP2575, 2009 WL 1920955, at *6 (Wis. Ct. App. July 7, 2009) ("The umbrella endorsement clearly indicates that umbrella coverage is only for liability claims the insured is legally obligated to pay. Nothing in the other sections of the umbrella policy creates a false expectation of excess UIM coverage. UIM is never mentioned in the umbrella policy."); *Matarasso v. Cont'l Cas. Co.*, 82 A.D.2d 861, 862 (N.Y. App. Div. 1981)

13

(holding that the umbrella policy incorporated the underlying policies insofar as they provide for protection against liability for damages to third parties, but that UM coverage provided by the underlying automobile liability policy did not involve claims of liability against the insured from third parties and thus was not incorporated by the umbrella policy).

In sum, given that the Umbrella Declarations associated with the Westfield Policy do not include UIM coverage, Miller's reliance on *Frye* is misplaced. The language in the UIM Endorsement clearly and unambiguously indicates that Miller's receipt of workers' compensation payments and settlement proceeds from the tortfeasor are proper setoffs against the "Limit of Insurance" applicable to the UIM Endorsement.

### C. The "Limit of Insurance" Applicable to the UIM Coverage in the Westfield Policy

Moving on, Miller argues that even if the workers' compensation benefits and tortfeasor settlement proceeds are proper setoffs under the UIM Endorsement, these amounts should be deducted from the $10,000,000 "Limits of Insurance" in the Umbrella Declarations (ECF 21-1 at 446), not the $1,000,000 in UM/UIM coverage Westfield represents in its Interrogatory answer (ECF 14-4 at 5). Miller's argument in this respect is also flawed.

In making this argument, Miller starts with page two of the UIM Endorsement, which states: "The *Limit of Insurance* under this coverage shall be reduced by all sums paid or payable by . . . anyone who is legally responsible . . . [or] under any workers compensation." (ECF 21 at 8 (alterations in original) (quoting ECF 21-1 at 303)). Miller then observes that the "Limit of Insurance" line on the first page of the UIM Endorsement is blank, and that below that line reads: "Information required to complete this Schedule, if not shown above, will be shown in the Declarations." (*Id.* at 9 (citing ECF 21-1 at 302)). From there, Miller leaps to the Umbrella

14

Declarations, noting that it includes both "Limits of Insurance" and "Limits of Liability." (*Id.* (citing ECF 21-1 at 446)). The "Limits of Insurance" box on the Umbrella Declarations sets forth $10,000,000 as the "Personal & Advertising Injury Limit." (ECF 21-1 at 446). The "Limits of Liability" box (which is enclosed within a "Schedule of Underlying Insurance" box), lists $1,000,000 for "Auto Liability" coverage. (*Id.*). As Miller sees it, the sum of the UIM Endorsement and the Umbrella Declarations means that any setoffs should be deducted from the "Personal & Advertising Injury Limit" of $10,000,000, not the $1,000,000 in UIM coverage that Westfield represents applies. (ECF 21 at 9).

Miller's leap to the "Personal & Advertising Injury Limit" in the Umbrella Declarations, however, is unreasonable. The Umbrella Declarations define a "Personal and advertising injury" as one that arises out of false arrest, detention, or imprisonment; malicious prosecution; wrongful eviction, entry, or invasion of the right of premises; slander, libel, or disparagement; violation of a person's right of privacy; the use of another's advertising idea; and infringement of another's copyright, trade dress, or slogan. (ECF 21-1 at 463). Miller sustained his injuries in an automobile accident while on the job, which is not an occurrence reasonably within the clear and unambiguous definition of "Personal and advertising injury" in the Umbrella Declarations. Consequently, Miller's assertion that the UIM limit should be $10,000,000 based on the "Limits of Insurance" for a "Personal & Advertising Injury" in the Umbrella Declarations, rather than $1,000,000 as Westfield represents, is simply not a reasonable interpretation of the Westfield Policy.

### D.  The Setoffs Do Not Contravene Public Policy

Miller also argues that the setoffs for workers' compensation and settlement proceeds

15

from the $1,000,000 in UIM coverage should be precluded because they contravene public policy. (ECF 21 at 10-13). This argument, too, fails under scrutiny.

"Insurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Accordingly, "[s]o long as the policy language comports with [Indiana] state statutes, it will control, but if it is inconsistent with those statutes, it is unenforceable." *Justice*, 4 N.E.3d at 1177 (citations omitted); *see also Bush v. State Farm Mut. Auto. Ins. Co.*, 905 N.E.2d 1003, 1005 (Ind. 2009) ("Indiana courts have long held that a provision in an automobile liability policy is unenforceable if it is inconsistent with Indiana's uninsured motorist statute.").

Miller, citing Indiana Code § 27-7-5-2, argues that "it would go against Indiana's explicit statutory intent to deprive [him] of his full UIM-coverage when he would be unable to recover the maximum limits that he is legally entitled to." (ECF 21 at 11). As Miller sees it, "[i]f an individual pays a specific premium for a million-dollar policy but is then only afforded a fraction of that policy once it finally applies, that individual is robbed of having previously paid a much lower premium for the same amount they are now being provided." (*Id.*).

Section 27-7-5-2 provides:

> The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured. However, underinsured motorist coverage must be made available in limits of not less than fifty thousand dollars ($50,000). . . . Insurers may not sell or provide underinsured motorist coverage in an amount less than fifty thousand dollars ($50,000).

Like Miller, the plaintiff in *Hardiman v. Governmental Interinsurance Exchange* claimed "the use of a worker's compensation set-off clause violates public policy by reducing the amount of coverage that the Legislature mandated for all motorists." 588 N.E.2d at 1335. While the Indiana Court of Appeals acknowledged that "[t]he public policy goal here is to ensure the injured party has been compensated fully," it nevertheless concluded that "the only public policy concern is that the statutory minimum of $25,000 be preserved."[8] *Id*. Because the plaintiff received the statutory minimum, the court found that "the worker's compensation set-off provision does not violate public policy." *Id.*

Here, the UIM coverage in the Westfield Policy is compliant with Indiana Code § 27-7-5-2 in that its "Limit of Insurance" is $1,000,000—the same as listed for the "Auto Liability" coverage in the Umbrella Declarations. Thus, the policy easily exceeds the required minimum amount of UIM coverage in Indiana as set forth in § 27-7-5-2, which is $50,000. The $1,000,000 in UIM coverage, less the deduction for setoffs in the amount of $157,686.13 in worker's compensation payments and $100,000 in tortfeasor settlement proceeds, leaves $742,313.87 remaining in available UIM coverage. This amount heartily exceeds the required statutory minimum of $50,000, and thus, the setoffs do not violate public policy. *See Hardiman*, 588 N.2d at 1335.

In sum, the clear and unambiguous language of the UIM endorsement in the Westfield Policy provides for setoffs of Miller's receipt of workers' compensation payments and settlement proceeds against the UIM "Limit of Insurance." Miller's responsive arguments in reliance on

---

[8] The statutory minimum for underinsurance coverage in Indiana at that time was $25,000, *id.* at 1335 n.2, but has since been raised to $50,000, Ind. Code § 27-7-5-2(a).

17

*Frye* are unavailing because there is no evidence that Westfield provided UIM (or UM) coverage to Kelley in the Umbrella Declarations. And while Miller urges that the UIM coverage limit should be $10,000,000 by operation of the "Personal & Advertising Injury" limit in the Umbrella Declarations, rather than $1,000,000 as Westfield represents in its Interrogatory answer, this simply is not a reasonable interpretation of the record based on the evidence that Miller cites in support. Rather, the Court concludes as a matter of law that the UIM coverage limit in the Westfield Policy is $1,000,000 based on Westfield's Interrogatory answer.[9] Finally, the setoffs from the $1,000,000 UIM coverage limit for $157,686.13 in workers' compensation payments and $100,000 in tortfeasor settlement proceeds do not violate public policy, given that $742,313.87 in available UIM coverage remains—an amount well in excess of the $50,000 statutory minimum in Indiana.

## IV.  CONCLUSION

For the foregoing reasons, the motion for partial summary judgment (ECF 14) filed by Westfield is GRANTED. As a matter of law, Miller's receipt of $157,686.13 in workers' compensation payments and $100,000 in settlement proceeds from the tortfeasor's insurer are setoffs from the $1,000,000 UIM coverage limit in the Westfield Policy, leaving $742.313.87 in available UIM coverage.

SO ORDERED.

Entered for this 21st day of July 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[9] See footnote 5 *supra*.